UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

JACQUELYN S. JONES-LOUIS,       )
                                     )
              Plaintiff,     )
                                     )
           vs.          )
                                     )   No. 1:13-cv-00762-SEB-MJD
PATRICK R. DONAHOE,        )
                                     )
             Defendant.   )

## **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

This cause is before the Court on Defendant Patrick R. Donahoe's Motion to Dismiss for

Lack of Jurisdiction [Docket No. 14], filed on September 30, 2013 pursuant to Federal Rule of

Civil Procedure 12(b)(1). For the reasons set forth below, the motion is GRANTED.

## **Factual Background**

Plaintiff Jacquelyn Jones-Louis, who is proceeding without the assistance of counsel, has

not produced a clear account of the facts underlying her allegations. Cognizant of our

responsibility to construe liberally the factual allegations of *pro se* plaintiffs, we attempt to give a

fair reconstruction of the harm she claims to have suffered. *See Wynn v. Southward,* 251 F.3d

588, 592 (7th Cir. 2001); *Hudson v. McHugh,* 148 F.3d 859, 864 (7th Cir. 1998). Because of the

extreme paucity of information contained in the Complaint, for these purposes we rely partly on

the factual summary contained in the EEOC's notice of decision on Plaintiff's employment

action before that body, which Plaintiff has attached here. *See* Pl.'s Ex. 2.

Plaintiff formerly worked as a mail processing clerk for a United States Postal Service

("USPS") facility in Indianapolis, Indiana.[1] Pl.'s Ex. 2 at 1. In April 2007, she suffered a knee

---

[1] Defendant Patrick R. Donahoe is the Postmaster General of the United States.

injury on the job. After an initial visit with a physician's assistant and with a doctor some days later, Plaintiff reports that she was seen by a knee surgeon in August 2007 and underwent a surgery on the knee in March 2008. Pl.'s Resp. 6. Plaintiff then suffered another on-the-job injury in October 2008. *Id.*[2] After suffering these injuries, Plaintiff applied for and received—for a time—a "limited duty" work assignment. Pl.'s Ex. 2 at 1. She also applied for disability benefits from the Office of Workers' Compensation Programs (OWCP) for the period April to June 2007; this appears to have been the time when, in the aftermath of the initial injury, she was unable to work entirely.

In January 2009, Plaintiff received notice from OWCP that her disability application had been rejected; OWCP subsequently informed her in February 2009 that her limited duty assignment had expired, and that she would be required to return to her normal job. *Id.* Citing inadequate documentation of her injury by Plaintiff's treating doctor, USPS management asserted that it was unable to allow her to continue working on limited duty status. Plaintiff refused to return to her normal job duties, and she stopped reporting to work entirely after management sent her home in January 2010. *Id.* at 2. After she did not respond to requests to report for investigative interviews and provide further documentation of her injury, Plaintiff was terminated in May 2010 for failing to comply with leave-related "call in" procedures and failing to report to work for 70 consecutive days. *Id*; Pl.'s Ex. 1 at 1 ("[T]he initial reason for my termination as I understand it is that I failed to use the 'call-in' system provided by the USPS Interactive Voice Response (IVR) system.").

According to Plaintiff, she did not "call in" her absences from work because she understood such a notification to management to be necessary only for "non-job related accident

---

[2] None of the documents submitted by Plaintiff explain the nature or severity of this second injury.

or illness"; since she regarded her knee injury as "work-related," she did not think the call-in requirement applied to her. Plaintiff also believes that the USPS terminated her for failing to appear at an "investigative interview" that was to have occurred as part of the inquiry into the justification for her prolonged absence from work. Pl.'s Ex. 1 at ¶ 4. She contends further that her termination occurred outside of the normal progressive discipline process, under which she should have received a "letter of warning" and "letter of intent" before her final dismissal. *Id.* at ¶ 2.[3]

Plaintiff filed an Equal Employment Opportunity complaint after her dismissal, alleging that the USPS harassed her on the bases of her African American race, her female sex, and her disability; she also alleged that her termination was a reprisal for having engaged in (unspecified) previous protected EEO activity. Pl.'s Ex. 2 at 2. She reported in this EEO complaint that "management refused to fill out paperwork and threw forms at her, placed her off the clock and ultimately removed her." *Id.* After initially submitting a request for a hearing before an EEOC Administrative Law Judge, Plaintiff withdrew the request; the USPS consequently issued a final decision reaffirming her dismissal pursuant to 29 C.F.R. § 1612.110(b). *Id.*

On August 31, 2010, Plaintiff filed an appeal from that final decision to the Equal Employment Opportunity Commission (EEOC), alleging that her termination violated Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 791 *et seq.* After review, EEOC affirmed the USPS's decision on February 13, 2013. Pl.'s Ex. 2 at 2–3. As the Commission explained: "The record yields little insight into why Complainant did not try

---

[3] According to the EEOC's notice of decision, Plaintiff also claimed in her EEOC appeal that she had not called in her absences because she mistakenly thought she had already been terminated as of January 2010—some four months before her actual termination. Pl.'s Ex. 2 at 2.

to cooperate in an effort to save her job, but it also contains no evidence that her race, sex, disability or prior protected activity were factors in the management's actions." *Id.* at 3.

Plaintiff timely filed her Complaint in this Court on May 9, 2013.[4] Docket No. 1.

## Legal Analysis

### Standard of Review

Defendant seeks dismissal of this suit pursuant to Federal Rule of Civil Procedure 12(b)(1), on the grounds that the Court lacks jurisdiction. As we shall explain, however, Defendant raises—and we address—the possibility that Plaintiff may be attempting to advance other legal theories. To the extent that Defendant seeks dismissal of such theories on the basis of the complaint's insufficiency, we construe Defendant's motion as seeking dismissal for failure to state a claim under Rule 12(b)(6) as well.

**Rule 12(b)(1)**

The Federal Rules of Civil Procedure command that courts dismiss any suit over which they lack subject matter jurisdiction—whether acting on the motion of a party or *sua sponte. See* Fed. R. Civ. Pro. 12(b)(1). In ruling on a motion to dismiss under Rule 12(b)(1), we "must accept the complaint's well-pleaded factual allegations as true and draw reasonable inferences from those allegations in the plaintiff's favor." *Franzoni v. Hartmax Corp.*, 300 F.3d 767, 771 (7th Cir. 2002); *Transit Express, Inc. v. Ettinger,* 246 F.3d 1018, 1023 (7th Cir. 2001). We may, however, "properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter

---

[4] As the EEOC's letter of decision on February 13, 2013 informed her, Plaintiff had 90 days after the final adjudication of her administrative appeal to file a civil action in federal district court.

jurisdiction exists." *See Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993);

*Estate of Eiteljorg ex rel. Eiteljorg v. Eiteljorg,* 813 F. Supp. 2d 1069, 1074 (S.D. Ind. 2011).

**Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of claims for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). In determining the sufficiency of a claim, the court considers all allegations in the complaint to be true and draws such reasonable inferences as required in the plaintiff's favor. *Jacobs v. City of Chi.,* 215 F.3d 758, 765 (7th Cir. 2000). Federal Rules of Civil Procedure 8(a) applies, with several enumerated exceptions, to all civil claims, and it establishes a liberal pleading regime in which a plaintiff must provide only a "short and plain statement of the claim showing that [he] is entitled to relief," Fed. R. Civ. Pro. 8(a)(2); this reflects the modern policy judgment that claims should be "determined on their merits rather than through missteps in pleading." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 779 (7th Cir. 2007) (citing 2 James W. Moore, et al., *Moore's Federal Practice* § 8.04 (3d ed. 2006)). A pleading satisfies the core requirement of fairness to the defendant so long as it provides "enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008).

In its decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the United States Supreme Court introduced a more stringent formulation of the pleading requirements under Rule 8. In addition to providing fair notice to a defendant, the Court clarified that a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Plausibility requires more than labels and conclusions, and a

"formulaic recitation of the elements of a cause of action will not do." *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007) (quoting *Twombly,* 550 U.S. at 555).  Instead, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* The plausibility of a complaint depends upon the context in which the allegations are situated, and turns on more than the pleadings' level of factual specificity; the same factually sparse pleading could be fantastic and unrealistic in one setting and entirely plausible in another. *See In re Pressure Sensitive Labelstock Antitrust Litig.*, 566 F. Supp. 2d 363, 370 (M.D. Pa. 2008).

Although *Twombly* and *Iqbal* represent a new gloss on the standards governing the sufficiency of pleadings, they do not overturn the fundamental principle of liberality embodied in Rule 8. As this Court has noted, "notice pleading is still all that is required, and 'a plaintiff still must provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief.'" *United States v. City of Evansville*, 2011 WL 52467, at *1 (S.D. Ind. Jan. 8, 2011) (quoting *Tamayo*, 526 F.3d at 1083). On a motion to dismiss, "the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint."  *Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994).

An additional consideration informs our standard of review here. Because Plaintiff filed her complaint without the assistance of counsel, we construe its contents with still greater liberality than that normally afforded to plaintiffs. *See Wynn v. Southward,* 251 F.3d 588, 592 (7th Cir. 2001) (citing *Hudson v. McHugh,* 148 F.3d 859, 864 (7th Cir. 1998)).

**Discussion**

Plaintiff's complaint and her briefs in opposition to this motion to dismiss do not present us with a clear picture of the legal claim she intends to state. On the pre-printed form she used to construct the complaint, Plaintiff described her entitlement to legal relief as follows: "I was improperly terminated, refused employment and inappropriately and incorrect[ly] affected by USPS's OWCP proceedings." Compl. § III. The form provided blanks to be marked if a complaint arises under Title VII of the Civil Rights Act, the ADEA, the ADA, or the Rehabilitation Act; Plaintiff marked none of these choices. *See* Compl. § II.

In her response brief in opposition to the motion to dismiss, Plaintiff elaborates on the nature of her grievance: "wrongful termination, i.e., a federal case brought by [a] former federal employee in which she previously was employed by the federal government (the USPS) who violated a federally mandated ruling or law (Title V, FECA)." Pl.'s Resp. 1–2 (emphasis original).[5] The core thrust of her theory appears to be that the Office of Workers' Compensation Programs (OWCP) erred in denying her FECA benefits—and that this error in turn led eventually to her termination. Pl.'s Resp. 7–10. According to Plaintiff, her disability application was disallowed in part because she submitted treatment notes from a nurse practitioner rather than a medical doctor. *Id.* She points in her response brief to a policy change implemented by OWCP in August 2011, providing that "the report of a physician assistant or a certified nurse practitioner will be considered medical evidence if countersigned by a qualified physician." *Id.* at 8–9 (citing DFEC Procedure Manual, § 2-0805).

We thus construe the complaint to contain two related claims: that OWCP wrongfully denied Plaintiff disability benefits or the ability to hold part-time work status, and that the USPS

---

[5] Later in the brief, Plaintiff reiterates: "My case is not about a *constitutional violation*, but a termination by the USPS in which the backdrop was a wrongly applied FECA Title 5 rule regarding the validation of my April 2007 claim and . . . which the USPS had plenty of time to correct." Pl.'s Resp. 3 (emphasis original).

wrongfully terminated her employment entirely. Because we lack jurisdiction over the claims Plaintiff has described and she has expressly declined to state any claims which would be properly before us, we must grant Defendant's motion to dismiss.

## I.     FECA Claim

As Defendant notes, the Federal Employees' Compensation Act (FECA), 5 U.S.C. § 8101, *et seq.*, extends to federal employees the right to receive compensation for disability or death resulting from personal injuries sustained while in the performance of duty and to receive supplies necessary to the relief and treatment of such work-related injuries. 5 U.S.C. §§ 8102, 8103. The statute explicitly provides that the system it creates is the exclusive remedy for federal employees, and it denies federal courts the jurisdiction to review the final decisions of the Secretary of Labor in applying the Act. "The action of the Secretary or her designee in allowing or denying a payment under this subchapter is – (1) final and conclusive for all purposes and with respect to all questions of law and fact; and (2) not subject to review by another official of the United States or by a Court by mandamus or otherwise." 5 U.S.C. § 8128(b).

As the United States Supreme Court has observed, there is no question that, in employing such "unambiguous and comprehensive" language, Congress intended to "bar judicial review altogether." *Lindahl v. Office of Personnel Mgmt.*, 470 U.S. 768, 780 n.13 (1985).[6] The "door-closing" provision thus precludes review of non-constitutional challenges to administrative determinations. *See Czerkies v. U.S. Dep't of Labor,* 73 F.3d 1435, 1437–1443 (7th Cir. 1996) (construing the statute to contain an exception for constitutional claims). The decision of the OWCP whether to assign an employee to "light duty" or "limited duty" status falls within the

---

[6] The Court in *Lindahl* contrasted the language employed by Congress in 5 U.S.C. § 8128(b) with that of the statute governing the Office of Personnel Management's administration of the annuities of retired employees. *See* 470 U.S. at 779–780 (citing 5 U.S.C. § 8347(c)).

scope of administrative determinations not subject to additional judicial review. *See Mackay v. U.S. Postal Serv.,* 607 F. Supp. 271, 274 (E.D. Pa. 1985). We thus lack jurisdiction over Plaintiff's claim here that OWCP's decision ran afoul of FECA.

## II. Wrongful Termination

We also read Plaintiff's complaint as alleging that the USPS wrongfully terminated her employment in 2010. *See* Compl. § III; Pl.'s Resp. 1–2. Our review of this charge, too, is foreclosed by statute.

The Civil Service Reform Act of 1978, 5 U.S.C. § 1101 *et seq.*, "elaborated a comprehensive framework for handling the complaints of civil service employees faced with adverse personnel decisions." *Ayrault v. Pena,* 60 F.3d 346, 347 (7th Cir. 1995) (citing *United States v. Fausto,* 484 U.S. 439 (1988)). The statute prescribes a fixed route for appeals of adverse employment decisions for most categories of employees: first to the Merit Systems Protection Board (MSPB), then to the Federal Circuit. 5 U.S.C. §§ 7513(d), 7701(a), 7703. As the Seventh Circuit has recognized, "the CSRA essentially preempted the field by 'superseding preexisting remedies for all federal employees.'" *Ayrault,* 60 F.3d at 348 (citations omitted). "By creating the CSRA, Congress implicitly repealed the jurisdiction of federal courts over personnel actions arising out of federal employment." *Richards v. Kiernan,* 461 F.3d 880, 883 (7th Cir. 2006) (quoting *Paige v. Cisneros,* 91 F.3d 40, 43 (7th Cir. 1996)).

United States Postal Service employees are covered by the CSRA, and are eligible for the system of appeals it provides. *See* 5 U.S.C. § 7511(a)(1); 39 U.S.C. § 1005(a)(1) (providing that Chapter 75 of the CSRA, covering adverse employment actions, applies to postal employees).[7]

---

[7] Plaintiff's response brief explains her belief—informed, she says, by consultation with the Central Regional Office of the MSPB in Chicago and with a union representative—that she was not eligible to appeal her termination to the MSPB. *See* Pl.'s Resp. 4–5. This belief appears to stem from a misunderstanding of the (admittedly confusing) web of distinctions the CSRA recognizes between different types of federal workers. Postal employees are members of

We thus lack jurisdiction to review Plaintiff's claim that she was improperly subjected to adverse employment action by the USPS.

## III. Discrimination or Constitutional Claims

As we have already stated, Plaintiff's complaint is devoid of any allegations that she was the victim of discrimination or that the USPS violated her constitutional rights. In the interests of clarity, however, we briefly address the possibility—which may be discerned from the attached documents pertaining to her EEO complaint—that Plaintiff may have intended to bring any such claims.

In a September 2011 letter to the EEOC relating to her pending complaint with the agency, Plaintiff recounted that USPS management refused to explain why it had scheduled her for an "investigative interview." In her words: "When I tried to inquire the significance of the 'investigative interviews,' on two occasions, I was never given a charge or cause, a true violation of my basic civil rights (Amendment 5/6 of the Constitution)." Pl.'s Ex. 1 at 1. The Fifth and Sixth Amendments are primarily concerned with the protection of criminal defendants—and are thus irrelevant to this employment dispute. The Fifth Amendment also contains a "due process" clause, providing that "no person . . . [shall] be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. In order to state a due process claim for the termination of government employment, however, a plaintiff must show that she had a vested property interest in the employment's continuation. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538 (1985). Postal employees whose positions are secured by union agreements requiring

the "excepted service," a class that is included within the definition of "employees" eligible to appeal adverse decisions to the MSPB. *See* 5 U.S.C. §§ 7511, 7513, 7701. The MSPB has published an "information sheet" presenting these classifications in slightly more accessible terms. *See* "U.S. Merit Systems Protection Board, Information Sheet No. 4," http://www.mspb.gov/netsearch/viewdocs.aspx?docnumber=771835&version=774743&application=ACROBAT (accessed August 12, 2014).

termination "with cause" may have such property interests, *see Winston v. U.S. Postal Serv.,* 585 F.2d 198, 208 (7th Cir. 1978), but Plaintiff has not set forth facts establishing such an entitlement. Nor has she pled the other essential elements of a procedural due process claim. *See Khan v. Bland,* 630 F.3d 519, 527 (7th Cir. 2010); *Hudson v. City of Chi.*, 374 F.3d 554, 559 (7th Cir. 2004) (discussing the components of a *prima facie* due process claim). We must therefore dismiss, without prejudice, any constitutional claim Plaintiff may have intended to bring.

Similarly, Plaintiff's EEOC complaint alleged that she suffered from race, sex, and disability status discrimination in violation of Title VII of the Civil Rights Act of 1964 and the Rehabilitation Act of 1973. *See* Pl.'s Ex. 2. She brought this suit within the 90-day window allowed for the filing of civil suits after an unfavorable EEOC decision, although in her complaint here she never mentioned either statute, despite the fact that the pre-printed complaint form she used provided boxes to check for such allegations. *See* Compl. § II. She also never alleges, either in the complaint or her briefs, any facts consistent with discrimination in violation of these federal anti-discrimination laws. In her response brief, which contains by far her most extended explanation of her grievances, she refers repeatedly to the OWCP's alleged violation of FECA—but of no other statutes. Under these circumstances, we must dismiss any potential Title VII, ADA, or Rehabilitation Act claims, again without prejudice.

## Conclusion

We cannot be certain of Plaintiff's intentions in filing this suit. At the least, it seems clear she seeks to challenge OWCP's decisions with regard to her disability status and the USPS's ultimate decision to terminate her employment. As we have explained above, we lack jurisdiction over these questions. Defendant's motion to dismiss pursuant to Rule 12(b)(1) is accordingly GRANTED, and these claims are dismissed with prejudice.

Because her complaint is so terse and lacking in any factual detail, we cannot exclude the possibility that Plaintiff intended to raise other legal theories—namely, the USPS's violation of her procedural due process rights or federal anti-discrimination law. We have not, of course, reached the merits of any such potential claims, nor do we express any opinion as to their viability. Defendant's motion to dismiss as it applies to such claims is GRANTED, but WITHOUT PREJUDICE. Accordingly, we will not yet enter a final judgment under Federal Rules of Civil Procedure 58. *See generally Luevano v. Wal-Mart Stores, Inc.,* 722 F.3d 1014, 1022 (7th Cir. 2013). Plaintiff is urged to seek the assistance of counsel in formulating an acceptable amended complaint should she choose to pursue further action.[8] Plaintiff may file an amended complaint within 28 days of the issuance of this order; if she does not, we will enter a final judgment in favor of Defendant and close the matter. Defendant's Motion to Dismiss for Failure to State a Claim is accordingly GRANTED.

Date: 9/3/2014

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

---

[8] Plaintiff is urged to seek the assistance of counsel *as soon as possible* if she elects to file an amended complaint. If she is unable to secure counsel through her own efforts, she may be able to seek assistance in doing so with the Clerk of Court of the Southern District of Indiana (main phone number 317-229-3700) or through the Indiana Bar Association (phone number 317-269-2000).

Distribution:

JACQUELYN S. JONES-LOUIS
P.O. Box 441061
Indianapolis, IN 46244

Jonathan A. Bont
UNITED STATES ATTORNEY'S OFFICE
jonathan.bont@usdoj.gov